**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOSEPH PAUL GUARNERI,

                          Plaintiff,

         v.                                         No. 06-CV-985
                                                          (NAM/DRH)

LT. JAMES HAZZARD; CPL J. CRONK; DEPUTY
PAUL MARSH, JR.; DEPUTY GRIPPIN; DEPUTY
HOWLAND; FREDERICK C. LAMY, Commissioner;
FRANCIS T. SULLIVAN, Commissioner; DEPUTY
MACE; JOHN DOE, Deputy; and DR. WEITZ,

                         Defendants.

---

**APPEARANCES:**                           **OF COUNSEL:**

JOSEPH PAUL GUARNERI
Plaintiff Pro Se
05-B-0213
Elmira Correctional Facility
Post Office Box 500
Elmira, New York 14902

GIRVIN & FERLAZZO, P.C.               GREGG T. JOHNSON, ESQ.
Attorney for Defendants Hazzard,     JACINDA HALL CONBOY, ESQ.
    Cronk, Marsh, Grippin,             SCOTT P. QUESNEL, ESQ.
    Howland, and Mace
20 Corporate Woods Boulevard
Second Floor
Albany, New York 12211-2350

O'CONNOR, O'CONNOR, BRESEE     JUSTIN O. CORCORAN, ESQ.
    & FIRST, P.C.
Attorney for Defendant Weitz
20 Corporate Woods Boulevard
Albany, New York 12211

HON. ANDREW M. CUOMO           BRUCE J. BOIVIN, ESQ.
Attorney General for the             Assistant Attorney General
    State of New York
Attorney for Defendant Sullivan
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Joseph Paul Guarneri ("Guarneri"), presently an inmate in the custody of

the New York State Department of Correctional Services ("DOCS"), brings this action

pursuant to 42 U.S.C. § 1983 alleging that defendants,[2] six Schoharie County employees

("County defendants"), two New York State Commissioners ("State defendants"), and one

physician, violated his First and Eighth Amendment rights while Guarneri was incarcerated

at the Schoharie County Correctional Facility ("Schoharie").  Am. Compl. (Docket No. 13).

Presently pending are the motions for summary judgment of the physician (Docket No. 19)

and the State defendants[3] (Docket No. 43) pursuant to Fed. R. Civ. P. 12(b)(6).  Guarneri

opposes both motions.  Docket No. 46.  For the following reasons, it is recommended that

the physician's motion to dismiss be granted in part and denied in part and that the State

defendant's motion be granted.

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] Guarneri initially named twelve defendants, two of whom were dismissed by an order dated March 6, 2007 (Docket No. 15) and one who remains unidentified.  State Defs. Memorandum of Law (Docket No. 43, Pt. 4) at 3 n.2.

[3] Defendant Lamay has not been served or otherwise appeared in this action.  See State Defs. Memorandum of Law at 3 n.5.  Likewise, defendant John Doe has neither been served nor further identified.  More than 120 days have elapsed since the amended complaint was filed.  Accordingly, it is recommended that the amended complaint be dismissed without prejudice as to both defendant pursuant to Fed. R. Civ. P. 4(m) and N.D.N.Y.L.R. 4.1(b).

2

**I. Background**

The facts are related herein in the light most favorable to Guarneri as the nonmoving party.  See subsection II(A) infra.

Guarneri was incarcerated at Schoharie from June 6 to August 2006 for a parole violation.  Am. Compl. at ¶ 2.  On June 16, 2006, Guarneri represented himself at his preliminary hearing.  Id. at ¶ 2.  Guarneri claims that the Schoharie law library was inadequate because it lacked appropriate resources and utilized a crude and unreliable library loan system which delivered requested material, if at all, after the date of the preliminary hearing.  Id.  These deficiencies "infringed and undermined [Guarneri's] constitutional rights."  Id.  Additionally, Guarneri claims that his time in the library was "intentionally and unreasonably limited . . . ."  Id. at ¶ 42.  Guarneri also contends that defendant Hazzard failed to copy the appropriate Penal Law sections regarding the period of punishment and failed to provide him with the correct case law pertaining to his litigation.  Id. at ¶ 45.

Besides his legal difficulty, Guarneri also arrived at Schoharie in grave pain due to pre-existing injuries including herniated discs in his neck and lower back, torn ligaments in his knee, Post-Traumatic Stress Disorder (PTSD), bipolar disorder, and depression.  Id.  Guarneri claims that on July 21, 2006, he was "denied . . . emergency medical care by [defendants] Weitz and [] Hazzard for a [knee] give-way episode . . . ."  Id. at ¶ 22.  Furthermore, Guarneri contended that upon receiving medical attention in the emergency room, hours later and after suffering severe pain, the treatment was wholly inadequate.  Id. at ¶ 32.  Guarneri also makes reference to incidents occurring in 2000 and 2003 which resulted in his herniated discs, alleging that at the time of the incident defendants Marsh

3

and Hazzard delivered inadequate medical care that was further perpetuated by defendants Weitz and Hazzard with their decision to prohibit Guarneri from receiving a back brace.  Id. at ¶ 30.  Additionally, Guarneri contends that defendants Hazzard, Crook, Marsh, Grippin, Howland, Mace, John Doe, and Weitz all colluded against him "by not letting [Guarneri] speak to mental health counselors when [he was suffering from] mental health episodes . . . ."  Id. at ¶ 35.  Lastly, Guarneri contends that after arriving at Elmira Correctional Facility in August 2006, defendants Hazzard, Mace, and John Doe deliberately interfered with his medical treatment by precluding him from wearing the hinged knee brace which had subsequently been provided to him at Schoharie.  Id. at ¶ 2.

    In response to defendants repossessing his knee brace, Guarneri timely filed a grievance.  Id. at ¶ 22, 25.  Guarneri contends that the State defendants failed to respond to this grievance because they were acting in concert with the County defendants, "deliberately and intentionally tak[ing] advantage of . . . [Guarneri]."  Id. at ¶ 25.  The State defendants lack of communication led Guarneri to the conclusion that "resort to an administrative remed[y] would be clearly futile . . . ."  Id.

    Additionally, Guarneri alleges that defendant Hazzard "deliberately and intentionally [attempted to] stop" Guarneri from practicing Catholicism while he was incarcerated.  Id. at ¶ 36.  Guarneri contends that "defendant . . . has known for years that [he] has been Catholic and has known the Rev. Ferenezy is not of the Catholic faith;" therefore, Hazzard's actions of arranging meetings between the two when Guarneri requested religious counsel amounted to defendants "tr[ying] to force a different religion on [Guarneri] . . . den[ying him] the opportunity to see clergy and Catholic Religious Advisors when requested."  Id. at ¶ 39.

4

## II. Discussion

Guarneri asserts two causes of action under the First Amendment that he has been denied (1) meaningful access to the courts and (2) his religious freedom.  Additionally Guarneri claims deliberate indifference to a serious medical need in violation of the Eighth Amendment because defendants (1) did not allow him to keep his hinged knee brace upon arrival at Elmira Correctional Facility, (2) provided delayed and inadequate emergency treatment on July 26, 2006, (3) received inadequate care at the time of his disc herniations in 2000 and 2003, and (4) was denied proper medical care when defendants refused to order him a back brace.  The physician, Dr. Weitz, moves for summary judgment on the grounds that (1) there was no personal involvement, (2) the amended complaint fails to state a claim for deliberate indifference to serious medical needs, (3) the amended complaint is barred by res judicata and collateral estoppel, and (4) the medical claims relating to Guarneri's back are barred by the statute of limitations[4].[5]  Defendant Sullivan contends dismissal is appropriate because there was no personal involvement.

### A. Legal Standard

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-

---

[4] Dr. Weitz advances this valid claim expressly, however briefly, in a footnote in his memorandum of law.  Weitz Mem. of Law (Docket No. 19, Pt. 3) at 15 n.2.

[5] Der. Weitz also advances the claim that Guarneri failed to state a valid pendent state law claim.  However, the amended complaint fails to allege any pendant state law claims.  Thus this argument need not be addressed.

5

movant." <u>Sheppard v. Beerman</u>, 18 F.3d 147, 150 (2d Cir. 1994).  However, "a 'complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." <u>Gilfus v. Adessa</u>, No. 5:04-CV-1368 (HGM/DEP), 2006 WL 2827132, at *3 (N.D.N.Y. 2006) (citing <u>De Jesus v. Sears, Roebuck & Co.</u> 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)).  Thus, dismissal is only warranted if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of facts which would support his or her claim or entitle him or her to relief.  <u>See</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Harris v. City of New York</u>, 186 F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude.  <u>See</u> <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a <u>pro se</u> litigant is entitled to "special solicitude," . . . that a <u>pro se</u> litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . .  At the same time, our cases have also indicated that we cannot read into <u>pro se</u> submissions claims that are not "consistent" with the <u>pro se</u> litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by <u>pro se</u> litigants" . . . and that <u>pro se</u> status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

<u>Id.</u> (citations and footnote omitted).

### B.  Personal Involvement

Both defendants contend that Guarneri has failed sufficiently to allege their personal involvement.

6

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. <u>Id.</u>; <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

<u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) (citing <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Despite Guarneri's submission of an amended complaint, he has failed to allege how Dr. Weitz was involved in the deprivation of his knee brace upon his arrival at Elmira Correctional Facility.  Guarneri only references defendants Hazzard, Mace, and John Doe when discussing the events surrounding the confiscation of his knee brace.  Am. Compl. at ¶ 19.  Thus Guarneri fails to allege any facts indicating that Dr. Weitz was personally involved in those events.

However, Guarneri has contended that Dr. Weitz "denied [Guarneri] appropriate mental health care by not letting [him] speak to mental health counselors . . ." and "refused [to]

7

prescribe treatment for (herniated disk) in [sic] the lower back and neck[6] . . . based on non-medical concerns like cost."  Am. Compl. at ¶¶ 35, 30.  These allegations specifically identify Dr. Weitz as a participant in the alleged medical indifference he suffered.  Thus, Guarneri has succeeded in alleging facts, indicating that Dr. Weitz was personally involved in his medical care.

    Additionally, Sullivan has contended that Guarneri fails to allege her personal involvement.  Guarneri alleges that the "State acted in concert with [County] defendants by not answering appeals of grievances submitted by [Guarneri] in a timely manner . . . ."  Am. Compl. at ¶ 25.  However, failing to "receive a response to a complaint . . . is insufficient to establish personal involvement [especially when] there is no other showing that [defendant] knew of or directly participated in any alleged violation."  Abbas v. Senkowski, No. 03-CV-476 (GLS/DRH), 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005). Additionally, Sullivan may not be held personally liable solely because of his supervisory position.  Moreover, Guarneri does not allege the creation or execution of an unconstitutional policy or negligent supervision.  Thus, Guarneri's conclusory assertions are insufficient to provide a factual basis to support the personal involvement of Sullivan.

    Therefore, it is recommended that Dr. Weitz's motion to dismiss be granted as to his involvement in the confiscation of the knee brace but denied with respect to his involvement in Guarneri's neck, back, and mental health treatments.  Additionally, it is recommended that Sullivan's motion to dismiss be granted.

_____

    [6] This allegation pertains solely to the neck and back injuries sustained in 2003. Those injuries occurring in 2000 have been dismissed as barred by the statute of limitations.  See infra at subsection II(E).

## C. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. CONST. amend. VIII.  This includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66.  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm."  Hathaway, 37 F.3d at 66.  The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need.  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare', a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d

158, 162-63 (2d Cir. 2003)(citing <u>Chance</u>, 143 F.3d at 702).  The severity of the denial of

care should also be judged within the context of the surrounding facts and circumstances of

the case.  <u>Smith</u>, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and

disregarded the prisoner's serious medical needs."  <u>Chance</u>, 143 F.3d at 702.  Thus, prison

officials must be "intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104,

(1976).  "Mere disagreement over proper treatment does not create a constitutional claim,"

as long as the treatment was adequate. <u>Id.</u> at 703.  Thus, "disagreements over medications,

diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for

specialists . . .  are not adequate grounds for a § 1983 claim."  <u>Magee v. Childs</u>, No. 04-CV-

1089 (GLS/RFT), 2006 WL 681223 at *4 (N.D.N.Y. Feb. 27, 2006).  Furthermore,

allegations of negligence or malpractice do not constitute deliberate indifference unless the

malpractice involved culpable recklessness.  <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d

Cir. 1996).


**1. Knee**

Guarneri may have offered evidence sufficient to conclude that the knee injury he

sustained was serious.  Generally, knee injuries have been "insufficient to trigger Eighth

Amendment protection and support a deliberate indifference claim."  <u>Johnson v. Wright</u>,

477 F. Supp. 2d 572, 575 (W.D.N.Y. 2007) (holding that a prisoner's torn meniscus suffered

as a result of a basketball injury was not a serious medical need) (quoting <u>Moody v. Pickles</u>,

No. 03-CV-850 (DEP), 2006 WL 2645124, at *6 (N.D.N.Y. Sept. 13, 2006) (holding that a

"medial meniscal tear, with joint effusion" which did not render plaintiff immobile was not a serious medical need); see also Williamson v. Goord, No. 02-CV-521(GLS/GHL), 2006 WL 1977438, at *9,14,16 (N.D.N.Y. July 11, 2006) (holding that a prisoner's knee injuries including arthrosis, degenerative joint disease, and partially torn anterior cruciate ligament ("ACL"), did not constitute "death or degeneration, or [constitute the appropriate level of] extreme pain [contemplated by] the law").

In this case, it is unclear how significantly the deprivation of Guarneri's knee brace affected his mobility as he has subsequently indicated his ability to ambulate.  Docket No. 46 at 3.  However, construing the facts in the light most favorable to Guarneri, the excruciating pain that he alleges may be of sufficient severity.  Id.  Therefore, viewing the evidence in the light most favorable to Guarneri, it appears that his knee injury was a serious medical condition.

Additionally, construing Guarneri's allegations as true, it appears that there exists a question of fact whether defendant acted with deliberate indifference to that medical condition.  Guarneri contends that after he was prescribed the hinged knee brace, defendants intentionally interfered with his treatment by denying him use of the brace.  Am. Compl. at ¶ 19.   Moreover, Guarneri contends that defendants intentionally delayed transporting him to an emergency room when his knee gave way, causing him excruciating pain for an unnecessarily long period of time .  Id. at ¶ 32.

Therefore, it is recommended that Dr. Weitz's motion on this ground be denied.


### 2. Mental Health

Guarneri also alleges that he suffered from and received inadequate medical treatment

for PTSD, bipolar disorder, and depression.   "Treatment of mental disorders of mentally disturbed inmates is . . . a serious medical need" as contemplated by <u>Estelle</u>.  <u>Guglielmoni v. Alexander</u>, 583 F. Supp. 821, 826 (D. Conn. 1984).  Thus, considering all of Guarneri's various complaints concerning his mental health, it is clear that he has alleged facts sufficient to provide relief as to whether he suffered a serious medical need as a result of his mental illnesses.

Moreover, Guarneri also contends that defendants have deliberately precluded him "from speaking to mental health counselors when hav[ing] mental health episodes . . . ."  Am. Compl. at ¶ at 34-35.  If proven, this constitutes deliberate indifference to Guarneri's mental health needs.  Therefore, it is recommended that Dr. Weitz's motion on this ground be denied.

### 3. Back

Guarneri alleges sufficient evidence to present a serious medical need.  Other courts have held that "[s]evere back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment."  <u>Nelson v. Rodas</u>, No. 01-CV-7887 (RCC/AJP), 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (citations omitted); <u>see</u> <u>also</u>, <u>Farraday v. Lantz</u>, No. 03-CV-1520 (SRU), 2005 WL 3465846, at *5 (D. Conn. Dec 12, 2005) (holding that "persistent[] complain[ts] of lower back pain caused by herniated, migrated discs [and] sciatica . . ." leading to severe pain constitutes a serious medical need).  Therefore, with regard to the 2003 back injury, Guarneri has alleged a serious medical need.

Additionally, Guarneri alleges that defendant Hazzard "deliberately and with malice

denied adequate medical care . . . ."  Am. Compl. at ¶ 23.  Thus, construing these allegations in the light most favorable to Guarneri, he has alleged deliberate indifference to this medical need.  Thus, it is recommended that defendant's motion on this ground be denied.

### D.  Res Judicata/Collateral Estoppel

"A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Allen v. McCurry, 449 U.S. 90, 94 (1980) (applying res judicata to a 42 U.S.C. § 1983 action).  Thus, to sustain a claim of res judicata, the defense must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted).  In New York State, the analysis is governed by the transactional approach in which later claims are barred if they "aris[e] out of the same factual grouping as an earlier litigated claim even if the[y are] . . . based on different legal theories or seek[] dissimilar or additional relief."  Id.

Under the Full Faith and Credit Clause of the Constitution, federal courts must grant state court judgments the same preclusive effects as those given to other courts located within the state.  Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (citing Migra v. Warren City Sch. Dist., 465 U.S. 75, 81 (1984)).  However, the bar of res judicata will not apply where the original forum is incapable of providing the relief requested by the plaintiff.  Id.; Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986).  The Second Circuit has held that

13

a plaintiff in a § 1983 action who is seeking damages will not be vulnerable to dismissal based upon res judicata, although, a similar plaintiff seeking injunctive relief will be. Davidson, 792 F.2d at 277-78; Fay v. South Colonie Cent. Sch. Dist., 802 F.2d 21, 30 (2d Cir. 1986).

As a threshold matter, Dr. Weitz correctly notes that Guarneri's previous lawsuit, also filed in the Northern District of New York, is still pending. See Guarneri v. Bates, No. 05-CV-444 (GLS/DRH) (report-recommendation of magistrate judge pending final decision before district court). Because the previous action has not received an adjudication on the merits, Dr. Weitz cannot overcome the first prong of the analysis. Thus, it is recommended that Dr. Weitz's motion on this ground be denied without prejudice.

In the alternative, Dr. Weitz also raises the broader affirmative defense of collateral estoppel. "Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen, 449 U.S. at 94 (1980). Collateral estoppel is applicable:

> [I]f (1) there has been a final determination on the merits of the issue sought to be precluded; (2) the party against whom . . . preclusion is sought has a full and fair opportunity to contest the decision. . .; and (3) the issue sought to be precluded by the earlier suit is the same issue involved in the later action.

Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987) (citation omitted). The requirement of a full and fair opportunity to contest requires that the plaintiff "was fully able to raise the same factual or legal issues" in the prior litigation as asserted in the present case. LaFleur v. Whitman, 300 F.3d 256, 274 (2d Cir. 2002).

However, it is clear that there has not been a final determination in the pending federal

14

case and Dr. Weitz, again, cannot surmount the first prong of the test.  Therefore, Dr. Weitz's motion should be denied without prejudice on this ground as well.

### E. Statute of Limitations

Dr. Weitz moves to dismiss Guarneri's Eighth Amendment allegations concerning inadequate treatment for his neck and back on the ground that they are barred by the statute of limitations.  While there is no provision in § 1983, § 1988 provides that state law may apply if not inconsistent with the Constitution or federal law.  42 U.S.C. § 1988(a) (2003); Moor v. County of Alameda, 411 U.S. 693, 702-03 (1973).  In New York, the applicable statute of limitations for a § 1983 suit is the three-year period governing suits to recover upon a liability created or imposed by statute. See Owens v. Okure, 488 U.S. 235, 249-51 (1989); Romer v. Leary, 425 F.2d 186, 187 (2d Cir. 1970); N.Y. C.P.L.R. 214(2) (McKinney 2003).

Federal law governs the determination of the accrual date for purposes of a § 1983 claim.  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002).  The claim accrues "when the plaintiff knows or has reason to know" of the harm.  Id. (citations omitted).  "The crucial time for accrual purposes is when the plaintiff becomes aware that he [or she] is suffering from a wrong for which damages may be recovered in a civil action." Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980).  With regard to medical indifference claims, the statute of limitations in a § 1983 suit is derived from personal injury case law, not medical malpractice.  See e.g. Owens, 488 U.S. at 251.

Here, Guarneri's initial complaint was filed on August 14, 2006.  Compl. (Docket No. 1). Thus, claims relating to medical indifference occurring in 2000 are clearly outside the three-

year period.  However, claims regarding deliberate indifference resulting in herniated discs occurring in 2003 may fall within the three-year statutory period depending on when in 2003 the conduct occurred.  Therefore, claims relating to the second back injury in 2003 may present facts upon which relief may be granted depending on when in 2003 the claim is shown to have accrued.  At this stage, liberally construing Guarneri's amended complaint, the allegations therein are deemed to assert that claim accrued after August 14, 2003.

Thus, Dr. Weitz's motion on this ground should be granted with regard to the neck and back injuries occurring in 2000 and denied with regard to the back injuries occurring in 2003.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

1. Sullivan's motion to dismiss (Docket No. 43) be **GRANTED** and that the amended complaint be **DISMISSED** in its entirety as to her;

2. Dr. Weitz's motion to dismiss (Docket No. 19) be:

   a. **GRANTED** as to his lack of personal involvement with the confiscation of the knee brace;

   b. **DENIED** as to his lack of personal involvement in Guarneri's neck, back, and mental health treatments;

   c. **DENIED** as to Guarneri's back and neck injuries sustained in 2003; and

   d. **GRANTED** as to Guarneri's back and neck injuries sustained in 2000; and

3. The amended complaint be **DISMISSED** without prejudice as to defendants Lamy

and John Doe.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  February 6, 2008
          Albany, New York

United States Magistrate Judge